*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GILLIAM, Minors.

UNPUBLISHED
June 03, 2026
2:25 PM

No. 376916
Shiawassee Circuit Court
Family Division
LC No. 15-013720-NA

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to two of three minor children, the oldest and youngest, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent).[1] We affirm the trial court's order terminating respondent's parental rights to the youngest child, vacate the trial court's best-interest determination with respect to the oldest child, and remand to that court for further proceedings.

## I. BACKGROUND

Petitioner, the Michigan Department of Health and Human Services (DHHS), filed a petition for jurisdiction over the minor children under MCL 712A.2(b)(1) and (2) once an investigation confirmed medical neglect of the youngest child following his admission to the hospital for weight concerns and a diagnosis of "failure to thrive." At the preliminary hearing, petitioner testified that it was contrary to the welfare of the children to remain in respondent's care and custody because respondent was unable to provide the necessary medical attention to keep the youngest child safe in light of his medical issues. The trial court agreed and placed the children in the care and supervision of petitioner. The youngest child was placed in licensed foster care and the oldest remained in the care of her biological father, with whom

---

[1] The third, middle child was removed from these proceedings in accordance with the Indian Child Welfare Act, 25 USC 1901 *et seq*. We also note that while the trial court only referred to MCL 712A.19b(3)(c), the parties agree that the trial court relied upon sub-division (c)(*i*), not (c)(*ii*).

-1-

she already was staying at the time. Both children remained in these respective placements for the duration of the case.

Respondent pleaded no contest to the petition and was ordered by the trial court to participate in, and show benefit from, the services recommended by petitioner. These services included maintenance of housing and employment, undergoing a psychological evaluation and following up with its recommendations, completing parenting classes, and participating in anything else that might be added to the Parent Agency Treatment Plan (PATP) as the case evolved. Soon after initial disposition, petitioner became aware of respondent's use of methamphetamine, and her service plan was amended to include participation in and benefit from substance use disorder (SUD) treatment as well as submission to periodic drug screening. Respondent was referred to Recovery Pathways, an outpatient treatment provider, but she failed to consistently engage with the provider and was discharged. She was later referred to another outpatient provider, Wellspring Lutheran Services, but was ultimately also discharged from its care for inconsistent engagement despite her representations to petitioner that she was making progress in the program. Throughout this case, respondent's drug screens consistently returned positive for methamphetamine use.

Respondent failed to appear for the psychological evaluation that petitioner scheduled for her early in the case and eventually was assessed months later. The evaluation reflected a need for continued mental-health interventions and inpatient drug treatment services. Respondent attended parenting times inconsistently. She received a parenting education certificate from Catholic Charities, but both the caseworker and the doctor who prepared her psychological evaluation found that she did not exhibit a benefit from that education. As of the termination hearing, respondent had not found a continued source of verifiable legal income beyond receiving government assistance. The viability and stability of respondent's housing was the subject of some dispute between petitioner and respondent. Respondent had been living with an elderly woman for the majority of the case, but petitioner eventually found that living situation to be unstable because it was unclear whether respondent's lease agreement was enforceable.

Ultimately, the trial court terminated respondent's rights to both children, citing respondent's inability to consistently engage with SUD treatment, inability to abstain from drugs, and inconsistency in addressing her service plan. This appeal followed.

## II. ANALYSIS

## A. REASONABLE EFFORTS

Respondent first argues that petitioner did not perform its duty to make reasonable efforts for reunification because she was not referred to inpatient SUD treatment after her psychological evaluation deemed it necessary.[2]

This Court reviews the trial court's factual finding that petitioner made reasonable efforts for reunification for clear error. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). "A finding

---

[2] While respondent does not directly raise this argument as an independent issue in her appellate brief, we will nonetheless independently address it for completeness.

is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

In general, to preserve a challenge that petitioner failed to make reasonable efforts for reunification, a respondent must raise the issue when the services are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *In re Atchley*, 341 Mich App at 337. We note that respondent did not contend that the SUD-treatment services offered were ineffective until the termination hearing, but even deeming this issue preserved, respondent's argument fails.

"Under Michigan's Probate Code, the [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). Petitioner's duty to make reasonable efforts includes the creation of a service plan containing steps that the agency and the parent "will take to rectify the issues that led to court involvement and to achieve reunification." *Id.* at 85-86. Moreover, notwithstanding that petitioner "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248.

In this case, multiple SUD-treatment services were offered to respondent, and petitioner officially referred her to two different providers. Respondent was discharged from both providers on account of inconsistent participation. It was not simply that outpatient services were not effective for respondent, but rather that respondent failed to fully participate in the services. Additionally, if respondent believed that the outpatient services were insufficient at the time, she had a responsibility to inform petitioner while services were being provided, not months later at termination. Not only did respondent not do so, but the evidence also established that she refused inpatient services when offered. A DHHS caseworker testified that after the psychological evaluation, the caseworker brought up the possibility of inpatient treatment to respondent, and respondent refused. With respondent's inconsistent engagement as background, and her verbal refusal, it was reasonable for petitioner not to make a referral to inpatient services.

Respondent contended at the termination hearing that the service providers she interfaced with were unhelpful and unwilling to cooperate with her, but the record demonstrates that there was ample time for her to seek alternative providers or be proactive in identifying alternative services. Instead of informing petitioner that the services were insufficient, she refused more intensive services when offered. Therefore, the trial court did not clearly err by finding that petitioner made reasonable efforts to rectify respondent's substance-abuse barrier to reunification.

## B. STATUTORY GROUNDS

Respondent next argues, as to both MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(j), that the case with respect to the oldest child is justified solely on the basis of anticipatory neglect, that there was no evidence presented that respondent's methamphetamine usage was causing harm to the children, and that there was contrary evidence establishing that respondent had addressed the barriers of housing, income, and parenting skills, and was in the process of addressing the barrier of substance abuse.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). The statutory grounds must be proven by clear and convincing evidence. *Id.* at 711.

The statutory grounds for termination of parental rights relevant to this matter are enumerated under MCL 712A.19b(3):

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> > (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

We first address MCL 712A.19b(3)(c)(*i*). As an initial matter, the 182-day requirement was satisfied. The trial court assumed jurisdiction on June 13, 2024, and the court terminated respondent's parental rights on July 10, 2025.

More importantly, the conditions that led to adjudication were petitioner's allegations of medical neglect by respondent. Other conditions that more clearly arose as the case progressed were the barriers of substance use, housing instability, income instability, and transportation, each of which directly or indirectly related to that neglect. Respondent's related PATP service activities, adopted by the trial court, included participating in and benefiting from individual counseling and parenting classes, maintenance of stable housing and gainful employment, and drug screening. Additionally, on March 3, 2025, the trial court mandated 100 percent participation in parenting times.

As to the individual counseling, testimony from a DHHS caseworker established that respondent's participation in individual mental-health services was inconsistent. The evidence also supported that respondent did not sufficiently benefit from parenting classes. Both the caseworker and the doctor who conducted respondent's psychological evaluation noted deficiencies in the quality of respondent's parenting. The evidence also supported a finding that respondent failed to address the barrier of gainful, legal employment. Respondent, since the early stages of the case, had expressed her intention to take the formal steps necessary to begin receiving income for caregiving for the elderly woman with whom she resided. She conceded that, as of the time of termination, she had not begun to receive remuneration for caregiving services and that her only other sources of income were selling plasma, informally cleaning a friend's house, and receiving nutrition assistance. The evidence supports that respondent participated in all the drug screening that was asked of her, but the implicit ask was that her drug screens would be absent

of illegal substances. They were not. Respondent's drug screens more consistently flagged the presence of methamphetamine than not. As explained in greater detail above, respondent did not adequately address her substance-abuse issues.

We acknowledge that the evidence did not necessarily support a finding of housing instability. At the petition and initial disposition stages, there was no allegation that respondent's housing was insufficient, although it might fairly be characterized as questionable. Respondent remained at the same housing during the proceedings without a real change in circumstance, and the timeframe where respondent was experiencing homelessness preceded the initial disposition of this case. However, because there was more than sufficient evidence supporting that respondent did not rectify other conditions that led to adjudication, this error is harmless, and the trial court properly found by clear and convincing evidence that MCL 712A.19b(3)(c)(*i*) was satisfied.

Because we conclude that at least one statutory ground has been proven by clear and convincing evidence, we need not consider whether the other statutory grounds relied on by the trial court have also been proven by clear and convincing evidence. See *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000).

## C. BEST INTERESTS

Respondent lastly argues that the trial court erred by finding that termination of her parental rights was in the children's best interests. Respondent reasons that the trial court failed to consider the youngest child's improved medical condition and the oldest child's placement with a relative in its best-interest analysis. Respondent's argument as to the youngest child is meritless, but her argument as to the oldest child has merit.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court must find by a preponderance of the evidence that termination of parental rights is in the best interests of the child. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018). "This Court reviews a trial court's determination regarding best interests for clear error." *Id.*

"In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (internal citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020) (quotation marks and citation omitted). "[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App at 42. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id.* at 43.

Respondent is correct that the youngest child's failure to thrive, one of the issues which brought the case within the trial court's jurisdiction, had been corrected. However, the child's improved condition

-5-

in foster care combined with respondent's continued inconsistency addressing the barriers that facilitated his failure to thrive weighed in favor of terminating respondent's rights. In other words, evidence of the youngest child's improved condition was indeed considered by the trial court. However, it was considered as evidence supporting that termination was in his best interests. The trial court was presented with extensive evidence that the youngest child was doing well with his foster family, that they were attending to his needs, and that his medical condition had significantly improved while under their care. This was in addition to evidence that his initial poor condition was, at the very least, correlated with his being in respondent's direct care. Furthermore, despite his medical condition improving, his medical needs will likely persist and require greater than ordinary amounts of attention by primary caregivers. The trial court found that the child needed a consistent parent. This was particularly true in light of the youngest child's unique medical needs that required consistent attention. The youngest child's continued well-being while in the care of his foster family demonstrates that termination and adoption were in his best interests.

Further, respondent's missed parenting-time visits and inconsistent completion of portions of the service plan are factors that demonstrate reunification was not in the youngest child's best interests. See *In re Mota*, 334 Mich App at 321. And, while respondent consistently attended the child's medical appointments, that evidence was contrasted with evidence that respondent brought a stranger with felony warrants to a medical appointment. Overall, we are not left with a definite and firm conviction that the trial court clearly erred by finding that the evidence supported that termination was in the youngest child's best interests. See *In re Keillor*, 325 Mich App at 93.

With regard to the oldest child, we acknowledge that many of these same facts involving respondent's parenting skills, or lack thereof, indicate that termination was in that child's best interests as well. However, the trial court did not expressly consider the oldest child's placement with her relative father as evidence weighing against termination. The trial court had a duty to explicitly consider the child's placement with her father as a factor weighing against termination of respondent's parental rights. *In re Olive/Metts*, 297 Mich App at 43. As such, the factual record is inadequate for a best-interest determination regarding the oldest child. See *id*. Therefore, we vacate the trial court to that extent, and remand to that court for it to reassess the oldest child's best interests in light of relative placement.

## III. CONCLUSION

We affirm the trial court's termination of respondent's parental rights to the youngest child, vacate the trial court's best-interest determination as to the oldest child, and remand to that court for further proceedings. We retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani

# Court of Appeals, State of Michigan

# ORDER

Daniel S. Korobkin
Presiding Judge

IN RE GILLIAM MINORS

Michael J. Riordan

Docket No.    376916

LC No.        15-013720-NA

Philip P. Mariani
Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings. We retain jurisdiction. After the remand proceedings conclude, we will review the decisions that the trial court made during those proceedings and consider any remaining issues in this appeal. Any challenges to the trial court's decisions on remand must be raised in this appeal. Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal. The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

Appellant must initiate the proceedings on remand within 56 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded. As stated in the accompanying opinion, the trial court shall conduct a best-interest analysis as to the oldest child that expressly considers the child's relative placement. The proceedings on remand are limited to this issue.

The parties must serve copies of their filings in the trial court on this Court. Appellant must file with this Court copies of all orders entered on remand within seven days of entry.

Appellant must ensure the transcript of all proceedings on remand is filed in the trial court and this Court within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

June 03, 2026
Date

Chief Clerk